Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2525 | **DATE** | 8/27/2002 |
| **CASE TITLE** | Wright vs. Domain Source, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. plaintiff's motion for partial judgment is treated as a motion for final judgment by default and is granted. Enter Judgment Order and Decree. Defendant, Domain Source, Inc., is hereby enjoined, if it presently owns the domain name, paulwright.com., from transferring the domain name to any person or entity other than plaintiff. Defendant, Domain Source, Inc., is hereby ordered, if it presently owns the domain name, paulwright.com., immediately to transfer said name to plaintiff. Defendant shall pay plaintiff his costs. Plaintiff is given until 8/30/02 to submit a bill of costs. Count II of the complaint is dismissed with prejudice. The Court retains jurisdiction for the purpose of enforcement of this decree. This is a final judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 1 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 14 |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 8/27/2002 | |
| | | 02 AUG 27 PM 4:13 | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 02 C 2525 |
| ) | Judge Joan H. Lefkow |
| DOMAIN SOURCE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Paul Wright, *pro se*, filed this action on April 2, 2002, against Domain Source, Inc. ("DSI"), alleging violation of the Anticybersquatting Consumer Protection Act (the "ACPA"), codified at 15 U.S.C. § 1129(1),[1] and similar provisions of the California Business and Professions Code, CAL. BUS. & PROF. CODE §§ 17525 *et seq.* (2002), and seeking damages, injunctive relief, costs, and an attorney's fee based on alleged piracy of his registered domain name on the Internet. The complaint alleges that this court has jurisdiction over the ACPA claims as authorized under 15 U.S.C. § 1121(a), and supplemental jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1367.

DOCKETED

AUG 2 8 2002

---

[1]The ACPA, Pub. L. No. 106-113, 113 Stat. 1501, was enacted and became effective November 29, 1999. Although plaintiff alleges violation of the Lanham Act (formally known as the Trademark Act of 1946), 15 U.S.C. §§ 1125 *et seq.*, the anticybersquatting provision on which he relies throughout his papers is not part of the Lanham Act. And although the complaint uses some terms familiar to trademark infringement cases (*e.g.*, ". . . Plaintiff's services became directly associated with the Domain 'paulwright.com'" Compl. ¶ 9), he does not allege that "Paul Wright" or "paulwright.com" is a trademark.

1

# FACTS AND PROCEDURAL HISTORY

## A. Substantive allegations

The complaint alleges that plaintiff registered a domain name "paulwright.com" on or about June 29, 1999, with Network Solutions, Inc., the designated registrar of the Internet Corporation for Assigned Names and Numbers ("ICANN"), that plaintiff used this domain name in interstate and international commerce, and that his services have become directly associated with paulwright.com. During approximately September, 2001, plaintiff discovered that, due to circumstances beyond his control and despite his diligence in maintaining his domain name registration, his domain name registration had lapsed and that DSI had registered paulwright.com. On October 22, 2001, and again on December 27, 2001, plaintiff contacted paulwright.com via e-mail explaining his dilemma and requesting that DSI return the registration to him for a nominal charge such as $35. Responding to the second e-mail, DSI represented that it was in the "internet web traffic . . . business" and offered to sell the domain name to plaintiff for $1,855. The complaint alleges that DSI registered plaintiff's personal name without his consent, and without a good faith basis to register the name, and with the bad faith intent to traffic in plaintiff's personal name. The complaint also alleges that DSI traffics in domain names and engages in unlawful registration and marketing of domain names on the Internet. The complaint represents that DSI, not having persuaded plaintiff to buy the domain name, has informed plaintiff that it sold paulwright.com to another individual named Paul Wright.

In Count I, the complaint alleges that the registration of plaintiff's personal name as a domain name, which name is recognized in commerce as belonging to plaintiff, with specific intent to profit therefrom by selling the name, violates the ACPA, 15 U.S.C. § 1129. In Count II,

2

the complaint alleges violation of "California's Unfair Competition Act" (uncited, other than as may be referenced in paragraph 4 of the complaint as CAL. BUS. & PROF. CODE §§ 17525 *et seq.* (2002).[2]

### B. Jurisdictional allegations

Plaintiff, who is an attorney and a member of the bar of this court, alleges that DSI is a California corporation with its principal place of business in Rio Del Mar, California, and that Andrew Seivright ("Seivright") is registered with the Secretary of State of California as DSI's agent for service of process. Plaintiff represents and demonstrates by various forms of documentary evidence that his diligent efforts to obtain personal service on DSI at any of its known places of business were unsuccessful and that he, with leave of this court, obtained substituted service on the California Secretary of State. He further represents that he mailed a copy of the summons and complaint to Seivright at 617 Beach Drive, Aptos, California, and that Seivright acknowledged receipt in writing on June 28, 2002. Plaintiff's Illinois address was used in all of plaintiff's written communications with DSI. Plaintiff further represents that on June 28, a person identifying himself as Seivright left a voicemail message with plaintiff acknowledging, "I just received your certificate of service. . . ," from which facts plaintiff infers that DSI has actual as well as legally sufficient notice of the law suit.

### C. Procedural history

Plaintiff initially moved for preliminary injunction, attempting to prevent DSI from selling the domain name paulwright.com. This court heard the motion on July 8, 2002. The

---

[2] The court has found no indication that CAL. BUS. & PROF. CODE §§ 17525 and 17535 are denominated "California's Unfair Competition Act."

3

court directed plaintiff to submit an affidavit in support of his motion and continued the motion to July 23. On July 9, plaintiff filed the affidavit. The motion was continued at plaintiff's request to July 30. On July 25, however, because Seivright had informed plaintiff that DSI had recently sold the domain name, plaintiff interposed a motion for partial default judgment, believing that his claim for a preliminary injunction had become moot. The motion for partial default judgment alleges that DSI transferred the domain name in "open and express defiance of this court's jurisdiction," and further that DSI has refused to respond to plaintiff's communications or appear and participate in the litigation. Plaintiff seeks a judgment of liability on Counts I and II of the complaint, as well as reasonable expenses and an attorney's fee as compensation for DSI's failure and refusal to participate in the framing of a discovery plan in this case, and an order for forfeiture and transfer of the domain name, paulwright.com, to plaintiff.

## DISCUSSION

### A. Jurisdictional issues

*1. Subject matter jurisdiction*

This court has jurisdiction over the subject matter under 15 U.S.C. § 1121(a)[3] and 28 U.S.C. § 1331 (federal question).

*2. Personal jurisdiction*

The court has personal jurisdiction over DSI. "The plaintiff bears the burden of demonstrating personal jurisdiction." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000), citing *RAR, Inc. v.*

---

[3] Section 1121(a) gives the district courts original jurisdiction of all actions arising under chapter 22 - trademarks - without regard to the amount in controversy or the existence of diversity of citizenship.

4

*Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In order to meet this burden, the plaintiff must provide sufficient evidence to establish a *prima facie* case of personal jurisdiction. *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). In a federal question case, the court's assertion of personal jurisdiction must satisfy the due process requirements familiarly characterized as "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940), and the defendant must be amenable to service of process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons").

Amenability to service derives from Federal Rule of Civil Procedure 4(k)(1), which provides that service is effective to establish jurisdiction over the person of a defendant "(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or . . . (D) when authorized by a statute of the United States." The ACPA does not provide for nationwide service of process, *see* 15 U.S.C. § 1121, so DSI's amenability to service is governed by the Illinois long arm statute, 735 ILCS 5/2-209(a). *See LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill. 1999). The Illinois long arm statute provides for jurisdiction over a defendant who performs enumerated acts in connection with tort or contract and further allows the exercise of personal jurisdiction on "any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-290(c). Because the statute allows the exercise of personal jurisdiction to the

5

constitutional limits, "the statutory analysis collapses into a due process inquiry, and [the court] need not consider whether [the defendant] engaged in any of the acts enumerated under the long-arm statute." *E.g., LFG, LLC*, 78 F. Supp. 2d at 735, citing *Dehmlow v. Austin Fireworks*, 963 F. 2d 941, 945 (7th Cir. 1992); *see RAR, Inc.*, 107 F.3d at 1276.

The defendant may be subject to personal jurisdiction either by way of general or specific jurisdiction. *E.g., RAR, Inc.*, 107 F.3d at 1276. The defendant is subject to general jurisdiction when it is either domiciled in the forum state, *see Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000), or "where the defendant has continuous and systematic general business contacts with the forum[,]" *RAR, Inc.*, 107 F.3d at 1277, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (internal quotations omitted). Beyond DSI identifying itself as an "internet web traffic . . . business," which indicates that it does business only on the Internet, there is no evidence of general jurisdiction in this case.

In order to meet the specific jurisdiction requirements, the court applies the test articulated in *Reimer Express World Corp.*, 230 F.3d at 942-43, to

> . . . (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums . . . [(3)] whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; [and (4)] determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

Because the court has found no cases treating personal jurisdiction in the context of the ACPA, it will rely primarily on trademark infringement cases.

    *a.    Whether DSI has contacts with the forum*

Plaintiff points to DSI's Internet-related activities via a website registered under the

domain name "domainsource.com." Other alleged contacts include DSI's emails to plaintiff in connection with paulwright.com.

b.   *Whether these contacts meet the constitutional minimum*

In considering whether DSI's alleged contacts meet the constitutional minimum, the court will consider whether DSI has done "some act or consummate[d] some transaction with the forum state, or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws[.]" *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 834. Where part of the alleged wrongful conduct involves Internet activities, courts consider both the traditional "effects" analysis, as well as the more recently articulated "sliding scale" analysis. *See id.* at 835.

Under the sliding scale test, the court weighs the nature and quantity of the Internet activities in evaluating evidence of minimum contacts. *E.g. Zippo Mfg. Co.* v. *Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Three categories of Internet activity have been described: whether the defendant conducts business over the Internet through its active website, whether the defendant maintains an interactive website, or whether the defendant maintains a passive website without any interactive element. *E.g. School Stuff, Inc.* v. *Sch. Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050, at *3 (N.D. Ill. May 21, 2001). Courts generally exercise jurisdiction where an active site exists and do not exercise jurisdiction for passive sites. *LFG, LLC*, 78 F. Supp. 2d at 736. With respect to interactive sites, the middle category, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website[,]" *id.*; *Zippo Mfg. Co.*, 952 F. Supp. at 1124, between the user and the host computer. *School Stuff Inc.*, 2001 WL 558050, at *3. DSI appears

7

to have no business activity, such as a store or warehouse, other than the Internet. Its website includes a single "page," which includes the link "[c]ontact us for more information." Once an Internet user clicks on that link, they must complete a form, adding their name, email address and comments, and then click "[s]end email" or "[r]eset." As such, DSI maintains an interactive website.

Under the traditional effects doctrine test, the court considers whether "1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) causes harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered." *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 835, citing *Calder v. Jones*, 465 U.S. 783 (1984).

The evidence before the court is persuasive that DSI is not a corporation that owns and operates "brick & mortar" shops with a website designed to provide information to its customers within its limited market area. DSI identifies itself as an "internet web traffic . . . business," which fact indicates that it does business only on the Internet. Plaintiff's evidence supports his allegations that he earlier registered the domain name, which became associated with his business, and after his registration lapsed (through no fault of his own), DSI registered it and contacted plaintiff in Illinois to attempt to sell it to him. *See* discussion *infra* pages 10-11. There is evidence that DSI was aware when it solicited plaintiff to purchase paulwright.com that plaintiff was located in Illinois. These facts are sufficient to establish a *prima facie* basis for specific jurisdiction over DSI.

3.  *Service of process*

The court finds that DSI has been properly served with a copy of the summons and complaint. Under Rule 4(h), FED. R. CIV. P., a corporation may be served as upon individuals

8

under Rule 4(e)(1), "pursuant to the law of the state . . . in which service is effected . . . ," here, California, or "by delivering a copy of the summons and complaint to any agent authorized by law to receive service of process . . . ." Under the California Code of Civil Procedure, CAL. PRO. CODE § 416.10 (2002), in addition to delivery,

> . . . if the agent designated [by a corporation] cannot with reasonable diligence be found at the address designated for personally delivering the process, . . . the court may make an order that the service be made upon the corporation by delivering by hand to the Secretary of State, or to any person employed in the Secretary of State's office in the capacity of assistant or deputy, one copy of the process for each defendant to be served, together with a copy of the order authorizing such service. Service in this manner is deemed complete on the 10th day after delivery of the process to the Secretary of State.[4]

Plaintiff has demonstrated reasonable diligence in his attempt to personally serve process, has obtained an order of this court authorizing substitute service on the Secretary of State of California, and has served the Secretary of State by hand delivery. Further, the record reflects that the registered agent, Seivright, signed a postal receipt and orally acknowledged receipt of plaintiff's "certificate of service." As such, plaintiff has established that DSI has been served and has actual notice of this suit.

**B.     The ACPA claim: Count I**

Under 15 U.S.C. § 1129(1)(A),

Any person who register a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person' consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in

---

[4]Subsection (d) provides that "[t]he court order . . . may be a court order of a court of another state, or of any federal court if the suit, action, or proceeding has been filed in that court."

a civil action by such person.[5]

According to plaintiff's affidavit and the documents submitted therewith, DSI knowingly registered a domain name that consists of the name of plaintiff, Paul Wright, without plaintiff's consent or the consent of any other person named Paul Wright, with the specific intent to profit from the name by selling the domain name for financial gain to plaintiff or another person named Paul Wright. Specifically, plaintiff has submitted evidence that DSI is listed in a directory of domain registrants as the owner of multiple domains (Compl. Ex. F); that an on-line search of DSI domain names revealed numerous domain names, including many personal names and recognizable commercial names, that appear to bear no relationship to DSI or its representative, Seivright; that Seivright has admitted to plaintiff that DSI sells domain names as a business; and that DSI publishes advertisements such as "[h]undreds of prime domains for sale," and "[a] completely new method of listing domains for sale." In light of this evidence, the court finds that plaintiff has demonstrated that DSI has violated § 1129(1)(A), and that he is entitled to relief.

Section 1129(2) provides that "a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. The court may also, in its discretion, award costs and attorneys fees to the prevailing party." Inasmuch as plaintiff believes that DSI has already transferred paulwright.com to a third party whose name may also be Paul Wright, an order of injunction to transfer or to cancel the domain name may trespass on the rights of the third party, which this court is unwilling to do by way of default judgment. Nevertheless, the court's own search for paulwright.com yielded no report of

---

[5]Although subsection (B) of § 1129(1) sets out good faith exceptions to (A), none of the exceptions appears to be applicable. At least, by its default DSI has forfeited the assertion of an exception.

10

an active website with that domain name, which search of course means nothing other than it may be that DSI has not transferred the name or that it is no longer registered to anyone. In the event that DSI may still hold the domain name registration, however, the court may direct DSI to transfer the domain name to plaintiff if, upon service of this order, it has not in fact transferred the name to a third party, and it may award plaintiff his costs.

Plaintiff has not demonstrated that he is entitled to a reasonable attorney's fee based on DSI's failure to participate in this litigation. A party may choose to default, and the penalty for that is a default judgment. Neither is there an apparent basis for fees to a *pro se* lawyer litigant under the ACPA. *Cf. Kay* v. *Ehrler,* 499 U.S. 432 (1991) (A lawyer who proceeds *pro se* is not entitled to an attorney's fee under 42 U.S.C. § 1988); *DeBold* v. *Stimson,* 735 F.2d 1037, 1043 (7th Cir. 1984) (Expressly reserved the issue whether a *pro se* litigant who is also an attorney would be entitled to an award of an attorney's fee under Freedom of Information Act).

## C.  The California claims: Count II

Similar to the ACPA, California's Business & Professions Code, CAL. BUS. & PROF. CODE §§ 17525 *et seq.* (2002), prohibits the bad faith registration of a person's name as a domain name.[6] The law imposes a civil penalty for violation. *Id.* at § 17526. Section 17535, however,

---

[6]CAL. BUS. & PROF. CODE § 17525 (2002) provides,

(a) It is unlawful for a person, with a bad faith intent to register, traffic in, or use a domain name, that is identical or confusingly similar to the personal name of another living person or deceased personality, without regard to the goods or services of the parties.

(b) This section shall not apply if the name registered as a domain name is connected to a work of authorship, including, but not limited to, fictional or nonfictional entertainment, and dramatic, literary, audiovisual, or musical works.

(c) A domain name registrar, a domain name registry, or any other domain name registration authority that takes any action described in subdivision (a) that affects a domain name shall not be liable to any person for that action, regardless of whether the domain name is finally determined to

11

indicates that California law does not authorize a private right of action for plaintiff. Rather, the attorney general or certain other public officials are authorized to apply to a court for injunctive and other relief.[7] Without having been provided any authority for a private cause of action, the court concludes that plaintiff has no basis to assert this claim. For these reasons, Count II of the complaint will be dismissed.

## CONCLUSION

Although plaintiff has sought "partial" judgment, the above analysis demonstrates that plaintiff has received the relief available under the law that supports his complaint. The complaint seeks damages as well as injunctive relief, costs and an attorney's fee, but the court finds no basis in the law for an award of damages. For this reason, the motion for partial default judgment is treated as a motion for a final judgment by default and is granted.

---

infringe or dilute a trademark or service mark.

[7]Section 17535 provides,

Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, county counsel, city attorney, or city prosecutor in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public.

## JUDGMENT ORDER AND DECREE

Wherefore, it is ordered and decreed as follows:

A. Defendant, Domain Source, Inc., is hereby enjoined, if it presently owns the domain name, paulwright.com, from transferring the domain name to any person or entity other than plaintiff;

B. Defendant is hereby ordered, if it presently owns the domain name, paulwright.com, immediately to transfer said name to plaintiff;

C. Defendant shall pay to plaintiff his costs;

D. Plaintiff is given until August 30, 2002 to submit a bill of costs;

E. Count II of the complaint is dismissed with prejudice;

F. The court retains jurisdiction for the purpose of enforcement of this decree;

G. This is a final judgment.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 27, 2002

13